UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:19-cr-00211-FDW-DCK

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | AMENDED ORDER |
| (1) LAWRENCE JEFFREY BROOKS, | ) | |
| Defendant. | ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendant's Motion to Suppress Evidence (Doc. No. 58), the Magistrate Judge's Memorandum and Recommendation ("M & R") (Doc. No. 100) recommending Defendant's motion be denied, and Defendant's Objection to the Memorandum and Recommendation (Doc. No. 101). Defendant seeks review of the Magistrate Judge's Memorandum and Recommendation regarding Defendant's Motion to Suppress Evidence. (Doc. No. 58).

For the reasons that follow, Defendant's Objections to the Memorandum and Recommendation are OVERRULED, the Magistrate Judge's Memorandum and Recommendation is AFFIRMED and ADOPTED, and Defendant's Motion to Suppress is DENIED.

**I.    STANDARD OF REVIEW**

A district court may refer a motion to suppress to a magistrate judge for a recommendation pursuant to Federal Rule of Criminal Procedure 59(b)(1). See Fed. R. Crim. P. 59(b)(1). A party may file written objections to magistrate judge's memorandum and

1

recommendation within fourteen days of being served with a copy of the memorandum and recommendation. 28 U.S.C § 636(b)(1). "'Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.'" Morgan v. N.C. Dep't of Health and Human Servs., 421 F. Supp. 2d 890, 893 (W.D.N.C. 2006) (emphasis in original) (quoting Thomas v. Westinghouse Savannah River Co., 21 F. Supp. 2d 551, 560 (D.S.C. 1997)); see also Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987) ("[P]arties filing objections must specifically identify those findings objected to.") (quotation omitted). "Frivolous, conclusive or general objections need not be considered by the district court." Battle, 834 F.2d at 421 (quotation omitted). "A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge." Aldrich v. Bock, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004).

Thus, "[a]n 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." Id.; see also Jones v. Hamidullah, No. 2:05-2736-PMD-RSC, 2005 WL 3298966 at *3 (D.S.C. Dec. 5, 2005) (noting a petitioner's objections to a magistrate judge's report "on the whole without are merit in that they merely rehash [the] general arguments and do not direct the court's attention to any specific portion of the [report]"). General or conclusory objections result not only in the loss of de novo review by the district court but also in waiver of appellate review. Tyler v. Beinor, 81 F. App'x 445, 446 (4th Cir. 2003) (per curiam); United States v. Woods, 64 F. App'x 398, 399 (4th Cir. 2003) (per curiam). If proper objections are made, a district court will review the objections under a de novo standard. 28 U.S.C. § 636(b)(1). Absent a specific, proper, and timely filed objection, the Court

reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

**II.    BACKGROUND**

Defendant was charged in an eight-count superseding indictment on September 17, 2019. See (Doc. No. 22). Count One charged Defendant with participating in a Drug Trafficking Conspiracy 21 U.S.C. §841(a)(1), (b)(1)(A) and §846. Id. at p. 1. Count Two charged Defendant with Possession with Intent to Distribute Methamphetamine 21 U.S.C. §841(a)(1) and (b)(1)(A). Id. at p. 2. Count Three charged Defendant with Possession of Firearm in Furtherance of Drug Trafficking 18 U.S.C. §924(c). Id. Count Four charged Defendant with Possession of Firearm by Convicted Felon 18 U.S.C. 922(g)(1). Id. Count Five charged Defendant with Possession with Intent to Distribute Methamphetamine 21 U.S.C. §841(a)(1) and (b)(1)(A). Id. at p. 3. Count Six charged Defendant with Possession with Intent to Distribute Methamphetamine 21 U.S.C. §841(a)(1) and (b)(1)(A). Id. Count Seven charged Defendant with Possession of Firearm in Furtherance of Drug Trafficking 18 U.S.C. 924(c) and 2. Id. at p. 4. Finally, Count Eight charged Defendant with Possession of Firearm by Convicted Felon 18 U.S.C. 922(g)(1). Id.

On February 12, 2020, Defendant filed his original "Motion To Suppress…" (Document No. 43). On February 16, 2020, the Government filed its "United States Of America's Response In Opposition To Defendant's Motion To Suppress..." (Document No. 44). At a Status Conference conducted on July 10, 2020, Defendant's motion was denied without prejudice by Text Only Order. Defendant Lawrence Brooks' Motion To Suppress Evidence" (Document No. 58) and his "Supplemental Memorandum Of Points And Authorities In Support Of Defendant

Lawrence Brooks' Initial Pretrial Motions" (Document No. 63) were filed on July 14, 2020. The "United States Of America's Response In Opposition To Defendant's Motion To Suppress Evidence" was filed on July 15, 2020. (Document No. 65). On July 21, 2020, a "Reply To United States' Response In Opposition To Defendant Lawrence Brooks' Motions To Suppress" (Document No. 67) was filed. Finally, on July 26, 2020, the "United States of America's Response To Defendant's Reply to United States' Opposition To Motion To Suppress Evidence" (Document No. 72) was filed. The Court carefully reviewed the record, which included reading the transcripts of the suppression hearing and watching the law enforcement officer's body-worn camera footage.

### III. DISCUSSION

At the outset, the Court notes that Defendant's Objections to Memorandum and Recommendation appears to largely be the same as his initial Motion to Suppress. Compare (Doc. No. 63) with (Doc. No. 101). As such, it is difficult for this Court to glean the specific findings of the Memorandum and Recommendation to which Defendant objects beyond the determination that Task Force Officer (TFO) Newman is credible. See Generally (Doc. No. 101, objections I-IV). Additionally, Defendant objects to the Memorandum and Recommendation due to the staleness of the warrant affidavit and missing testimonial information on the canine team. See (id., objection V). Finally, Defendant generally restates his original objections, or rejects the Magistrate's specific findings, as to the vagueness of the North Carolina General Statute and as to when custody actually began. See (id., objections VI-VII). Accordingly, this Court will conduct *de novo* review of the law enforcement officer's credibility, (objections I-IV) the warrant affidavit, and testimony (objection V). The remainder of the Memorandum and Recommendation (objections VI-VII) will be reviewed for clear error.

After conducting a careful review of the M & R, the Court finds no error in, summarily agrees with, and adopts those portions of the M & R to which no objection was raised. The Court now turns to Defendant's specific objections.

**A. Defendant's Objections to the Credibility Determinations**

Most of Defendant's objections challenge the Memorandum and Recommendation's attribution of greater weight and credibility to TFO Newman's testimony rather than the Defendant's.[1] In addressing these objections, the Court notes that a reviewing court must take a deferential standard regarding the credibility of witnesses where the Magistrate Judge sits as a trier of fact. See United States v. Brooks, No. 1:05CR248-1, [2006 BL 36801], 2006 U.S. Dist. LEXIS 25626, at *3-4 (W.D.N.C. March 15, 2006); McNairn v. Sullivan, 929 F.2d 974, 977 n. 3 (4th Cir. 1991); United States v. Stoots, No. 97-4038, [129 F.3D 1261], 1997 U.S. App. LEXIS 32787, at *2 (4th Cir. Nov. 20, 1997) (unpublished table decision).

Defendant's objections I-III suggest that the Memorandum and Recommendation ignored factual discrepancies, or failed to consider the full factual record, because the Magistrate Judge found TFO Newman's testimony credible. See (Doc. No. 101). Therefore, Defendant objects to the Magistrate Judge's determination that TFO Newman is a credible witness. For example, in objection I Defendant argues "to minimize the lack of factual support, the magistrate relied solely on its conclusion that Newman should be considered a credible witness." (Doc. No. 101, p. 17). Defendant also suggests that the magistrate was *unjustified* in finding TFO Newman credible due to him not explaining the reason for the stop exactly the same way during the course of the traffic stop.[2] Additionally, Defendant objects to the M & R's conclusion that the traffic

---

[1] The Court finds that, out of seven objections raised by the Defendant, objections one, two, and three (including part of five) pertain solely to the finding that TFO Newman was more credible than Defendant.

[2] Defendant seems to suggest that his definition of a credible witness is the only correct way of determining credibility. ("A credible witness, however, would not change the distance itself. The fact that TFO Newman

5

stop was not pretextual by repeating his original motion to suppress. Compare (Doc. No. 63, pp. 11-15) with (Doc. No. 101, pp. 14-18).

The Court is not persuaded by Defendant's characterization that the Magistrate Judge failed to consider, or was unjustified, in determining TFO Newman was more credible than himself. In reaching this determination, the Magistrate Judge explained that TFO Newman was "an experienced officer — and a *credible* witness." (Doc. No. 100, p. 26). The Memorandum and Recommendation implicitly notes one reason why; TFO Newman had approximately 21 years of training and experience as a law enforcement officer. (Doc. No. 100, pp. 13, 26). This alone is enough to overrule Defendant's objection on the officer's credibility because the Magistrate Judge could find him credible based on this information. Additionally, Defendant fails to present one shred of evidence that TFO Newman is not a credible witness. Instead Defendant's whole objection seems to rest on the idea that it is impossible for the Magistrate Judge to agree with TFO Newman over himself. The undersigned does not agree.

Assuming, *arguendo*, TFO Newman's testimony indicating that he saw Defendant's "vehicle drift from the far left turning lane into the right turning lane — veering in-between two other vehicles who were also turning" was not enough to establish reasonable suspicion, or probable cause, the stop was still lawful. See id. at 26.[3] Under the "objective test" adopted by the Fourth Circuit in United States v. Hassan El, TFO Newman had an objective right to stop the vehicle based on the drug trafficking investigation at the time, irrespective of Newman's subjective motivation or suspicion. 5 F.3d 726, 730 (4th Cir. 1993). The undersigned agrees with the M & R's determination that the underlying lengthy drug investigation of Defendant,

---

provided two different explanations of reasons for the stop within moments of one another is strong evidence that the traffic stop was not the reason for the stop.") See (Doc. No. 101, p. 18).

[3] Defendant also completely glances over the fact that he admitted to committing the actual underlying traffic violation. (Doc. No. 100, p. 17).

standing alone, established probable cause for *both* the stop and the search. (Doc. No. 100, p. 22). Additionally, Hassan El makes it clear that the seizure of evidence of a more serious offense does not require suppression on the grounds that the underlying stop was pretextual. Id. Therefore, even if the traffic stop were pretextual in nature, it would not require suppression in this case.

As it stands this Court has not found, nor been presented with, any evidence that the Fourth Circuit, or any court for that matter, has determined that the North Carolina General Statute § 20-152 is unconstitutionally vague. In fact, case law has upheld the statute as recent as 2012.[4] Additionally, the Magistrate Judge was correct in finding that even if the state statute was found unconstitutionally vague it also does not *require* suppression. See (Doc. No. 100, p. 26 citing United States v. Gibbs, 680 Fed.Appx. 184, 185 (4th Cir. 2017) (holding even assuming Maryland's following-too-closely statute was vague "the officer was entitled to rely on the statute unless it was 'clearly unconstitutional.'"). Therefore, this Court overrules Defendant's objection based on the stop being pretextual or that the North Carolina General Statute of following too close is unconstitutionally vague.

Likewise, objections II-III irrefutably rest on the premise that the Magistrate Judge *has* to be incorrect because he found TFO Newman credible. Objection II claims that the "facts do not provide justification for the officer's assertion that there was a smell a marijuana, and objection III argues "nothing in the record supports TFO Newman's allegations that there was a marijuana smell." (Doc. No. 101, pp. 19-27). Both objections, hinge on the notion that it was impossible for the Magistrate Judge to find that TFO Newman could have smelled the odor of marijuana. Id. at p. 22-23. Defendant supports these objections with the argument that TFO Newman never

---

[4] See United States v. Flores-Duran, 531 Fed. Appx. 348, 356 (4th Cir. 2012) (upholding based on rule of one car length for every ten miles per hour).

included any facts in his report that would indicate that he observed Defendant under the influence of drugs, nor did he immediately inform Defendant he had probable cause to search for marijuana. Id. at 101. Finally, Defendant claims the alleged contraband found in his vehicle could have been legal hemp not marijuana, which "smell nearly identical." Id.

Despite raising these arguments, Defendant fails to provide any relevant case law to support his arguments on the marijuana smell. No case cited by Defendant requires identifying the signs or "symptoms of marijuana use" as a prerequisite before a law enforcement officer can establish probable cause to search a vehicle based on the plain smell odor of marijuana. See Generally (Doc. No. 101, pp. 20-21). Defendant does cite one Fourth Circuit case involving the plain smell of marijuana, however, he cites it in such a manner as to suggest the holding was based upon the urgency in which the officer informed the Defendant driver of his probable cause search: "the officer immediately told the defendant that he had probable cause to search the vehicle and proceeded to do so." See (Doc. No. 101, p. 22 citing United States v. Palmer, 820 F.3d 640). This is not the case. In Palmer, contrary to what Defendant asserts, the officer did not inform the Defendant when he established probable cause to search the vehicle then immediately proceed to do so. The officer in Palmer immediately advised the Defendant he had grounds to search his vehicle, however, the actual search of the vehicle did not happen until an additional officer arrived on scene with a drug dog.[5] Like in Palmer, TFO Newman waited until he had an additional officer on scene before searching Defendant's vehicle.

Nowhere in Palmer, did the Court create a duty for law enforcement officers to immediately inform, then immediately search a defendant, after establishing probable cause based on the plain smell of marijuana. TFO Newman knew he had probable cause to search the

---

[5] In Palmer, the search of the vehicle did not happen until seventeen minutes after the traffic stop had been initiated and about ten minutes after the officer called for a drug dog.

8

vehicle — based on the underlying drug investigation — in fact the walled-off traffic stop was performed to *protect* that investigation in case no evidence of the crime was found in the vehicle or on the Defendant. The very idea that an officer would be required to disclose that he had probable cause to search, then immediately do so, would make walled-off stops and even consent searches while already having probable cause obsolete.

Defendant also argues that the smell TFO Newman detected *could* have been from a legal source. Id. Defendant cites a North Carolina State Bureau of Investigation report that seems to suggest that marijuana and hemp look and smell almost identical. See (id. at 21 fn. 7). Defendant argues that since none of the materials found in the vehicle were tested this Court should reject the Magistrate's conclusion and find that there was no smell of marijuana. Defendant, however, provides no relevant case law which requires a law enforcement officer to test contraband found in a vehicle based on the plain smell of marijuana. In fact, Defendant's own argument cuts against finding in his favor. Assuming, *arguendo*, hemp and marijuana smell "identical," then the presence of hemp does not make all police probable cause searches based on the odor unreasonable. The law, and the legal landscape on marijuana as a whole, is ever changing but one thing is still true: marijuana is illegal.[6] To date, even with the social acceptance of marijuana seeming to grow daily, precedent on the plain odor of marijuana giving law enforcement probable cause to search has *not* been overturned.[7] Therefore, if hemp does have a nearly identical smell to marijuana — and hemp was present — it would suggest to this court that TFO Newman was even more reasonable to believe evidence of marijuana was present.

---

[6] The Court acknowledges that some jurisdictions have "de-criminalized" marijuana and the federal government has *chosen* to not enforce federal statutes regarding it in certain states — however it is still illegal to possess both federally and in North Carolina.

[7] See United States v. Morin, 949 F.2d 297, 300 (10th Cir. 1991) (holding that because marijuana has a district smell, "the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage.").

As such, the Magistrate Judge was correct in finding that TFO Newman had probable cause to search the vehicle based on the plain smell and view of marijuana in the vehicle.[8] (Doc. No. 100, p. 26). Likewise, the Magistrate was correct in finding that once Newman had established probable cause to believe drug contraband was in the vehicle, he was no longer restricted to the limited scope of a routine traffic stop. Id. Defendant's objection alleging the evidence wholly contradicts TFO Newman's testimony is therefore unpersuasive and overruled.

Defendant's final argument against the Magistrate Judge's finding that Detective Bridges was credible is based on the allegation that he knowingly and intentionally made a false statement, or with reckless disregard for the truth, that was necessary to the finding of probable cause.[9] (Doc. No. 101, p. 28). The Government's response to this allegation is that Defendant's claim is meritless and based on inaccurate characterizations, of both the testimony and the Magistrate Court findings. (Doc. No. 103, p. 2). This Court agrees with the Government. Defendant rashly attacks Detective Bridges' credibility and character by accusing him of making false statements which are *wholly* unsupported by the evidence or the record.

Defendant alleges evidence of the false statement is contained in TFO Bridges' affidavit which stated that Defendant had participated in two controlled buys whereas the officer's testimony stated he participated in *one*. See (Doc. No. 101 at 28-29). The Government responded that this allegation is an inaccurate characterization because the affidavit stated, "In April 2019, law enforcement utilized a confidential informant to make two controlled buys from an individual who, on one of the occasions, went to the rear of 8617 Wood Lake Court, Apartment 302, and then to the drug transaction, apparently to obtain the drugs to be sold." (Doc.

---

[8] Citing Illinois v. Gates, 462 U.S. 213 (1983).
[9] Defendant argues he is entitled to a *Franks* hearing without making a substantial preliminary showing that the affiant made (1) a false statement (2) "knowingly and intentionally, or with reckless disregard for the truth" that was (3) "necessary to the finding of probable cause." Franks v. Delaware, 438 U.S. 154, 155-56 (1978).

No. 103, pp. 2-3). The undersigned agrees with the Government. Detective Bridges' affidavit and testimony are not contradicted. The affidavit does not state Defendant personally participated in the controlled buys, and the Magistrate Judge makes it clear the buys were from a confidential informant (K.F.) not the Defendant. See (Doc. Nos. 1 and 100 at 22). Defendant's allegation against Detective Bridges is baseless, and without merit. Defendant has failed to make the requisite showing for a *Franks* hearing; therefore, the objection is overruled.

Accordingly, upon *de novo* review, this Court finds TFO Newman and Detective Bridges are credible witnesses. Therefore, Defendant's objection to the Memorandum and Recommendation on this point is OVERRULED.

**B. Defendant's Objection on Failure to Consider Flaws in the Presentation of Probable Cause**

There appears to be an issue of the status or qualifications of the dog and whether it has been resolved or not. In the interest of justice, and moving the case forward[10], a hearing will be held on April 19, 2021 at 2:30 pm. The Court shall defer its ruling on this objection until both parties have been given the opportunity to present evidence, and witnesses, as to the affidavit and canine team training issue.[11]

**C. Clear Error Review**

As noted above, the only *specific* objections raised in Defendant's Objection to Memorandum and Recommendation concerns the Magistrate Judge's conclusion that TFO Newman was a credible witness, the issue of the warrant affidavit, and the missing testimonial information. See (Doc. No. 101). The Magistrate Judge's remaining conclusions are reviewed for clear error. Having closely reviewed the Memorandum and Recommendation, the Court

---

[10] In part due to the coronavirus pandemic
[11] Shortly after this Court filed the Notice of Hearing (Doc. No. 119) the Government filed an Exhibit (Doc. No. 120) containing relevant canine training and certification records. In the interest of justice, the hearing on this issue will still go forward as planned until Defendant has been given the opportunity to be heard and question the witness.

finds no clear error. Accordingly, this Court AFFIRMS the Magistrate Judge's Memorandum and Recommendation.

IV. **CONCLUSION**

Accordingly, for the foregoing reasons, the Magistrate Judge's Memorandum and Recommendation (Doc. No. 100) is AFFIRMED, Defendant's Objection to the Memorandum and Recommendation (Doc. No.101) is OVERRULED, and Defendant's Motion to Suppress Physical and Testimonial Evidence (Doc. No. 58) is DENIED.

IT IS SO ORDERED.

*[signature]*
Frank D. Whitney
United States District Judge

Signed: April 28, 2021