UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:19-cr-00211-FDW-DCK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| vs. | ) ) ORDER |
| LAWRENCE JEFFREY BROOKS, | ) |
| Defendant. | ) |

THIS MATTER is before the Court on Defendant's Objection, (Doc. No. 175), to the Magistrate Judge's Memorandum and Recommendation ("M&R"), (Doc. No. 174). Defendant seeks review of the M&R concerning Defendant's Motion to Suppress, (Doc. No. 159). For the foregoing reasons, the Magistrate Judge's M&R is AFFIRMED and ADOPTED, Defendant's Objection is OVERRULED, and Defendant's Motion to Suppress is DENIED.

## I. BACKGROUND

On September 17, 2019, Defendant was charged in a superseding bill of indictment with one count of drug trafficking conspiracy in violation of 21 U.S.C. §§ 841 and 846, three counts of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2, two counts of possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c), and two counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). See (Doc. No. 22). In Defendant's Objection to the M&R, Defendant does not dispute the Magistrate Judge's discussion of the procedural history or factual summary. (Doc. No. 175). Rather, he disagrees with the Magistrate's proposed conclusions of law regarding the voluntariness of Property Manager Stephanie Lourmais' consent to search the common area of the

1

Morningstar Storage facility ("Morningstar"), located at 8100 South Boulevard in Charlotte, North Carolina, and the physical evidence seized within unit #2404 pursuant thereto, to wit, a black duffel bag containing approximately eight kilograms of methamphetamine. Id. Accordingly, the Court hereby ADOPTS and incorporates by reference Sections I and II of the M&R as if fully set forth herein. (Doc. No. 174, pp. 1-9).

In his Motion to Suppress,[1] Defendant concedes that "[t]here is no question that as the property manager of that Morningstar Storage facility, Ms. Lourmais has the authority to consent to a search or inspection of the 'common area' of the facility." (Doc. No. 159, p. 4). Rather, Defendant attacks the voluntariness of the consent, arguing that Ms. Lourmais "provided all of the information about the unit, the surveillance video footage, and allowed the dog sniff because she believed law enforcement had a search warrant when they arrived at the facility."[2] Id. As such, Defendant seeks to suppress the above-noted evidence obtained "involuntarily" from Ms. Lourmais, as well as any evidence procured using the subsequently obtained search warrant for unit #2404. Id. at p. 5.

In the M&R, the Magistrate Judge addressed Defendant's argument in three stages: first, whether Defendant had standing to contest the search of the storage *unit*; second, whether Defendant had standing to contest the search of the *common areas of the storage facility*; and third, whether Ms. Lourmais' consent to search the *common areas of the storage facility* was voluntary.

---

[1] The Court notes Defendant's instant Motion to Suppress is the second suppression motion filed in this case. On April 28, 2021, this Court affirmed the Magistrate Judge's M&R, denying Defendant's first suppression motion related to facts surrounding the traffic stop of the vehicle Defendant was driving on the same date in question in which law enforcement seized marijuana, methamphetamine, and two firearms from the car. (Doc. No. 126).

[2] Defendant's Motion also contests whether the officers followed Federal Rule of Criminal Procedure 41 by failing to leave a copy of the inventory list of items seized from the storage unit with a copy of the search warrant. (Doc. No. 159, p. 5). Defendant makes no mention of this issue in his Objection to the M&R, thereby waiving his right to appellate review. See Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (approving the waiver rules on matters for which a magistrate judge had made a decision or recommendation).

(Doc. No. 174). As to the first issue, the Magistrate Judge determined that Defendant had a "legitimate expectation of privacy in the storage *unit* such that he can contest the legality of the search *of the unit* pursuant to the Fourth Amendment." Id. at p. 11. However, the Magistrate Judge subsequently determined that not only does Defendant lack capacity to object to the search of the *common areas of the storage facility*, but even if he did have standing to contest such a search, Ms. Lourmais' consent to search the common areas was voluntary. Id. at p. 14. Ultimately, the Magistrate Judge concluded that law enforcement had sufficient supporting evidence to obtain a search warrant of unit #2404, and all law enforcement action at the Morningstar facility on May 14, 2019, leading to the seizure of a black duffel bag containing approximately eight kilograms of methamphetamine was "consistent with the Fourth Amendment." Id. at p. 16. Therefore, the recommendation to this Court is to deny Defendant's Motion to Suppress. Id.

## II. STANDARD OF REVIEW

A district court may refer a motion to suppress to a magistrate judge for a recommendation pursuant to Federal Rule of Criminal Procedure 59(b)(1). See Fed. R. Crim. P. 59(b)(1). A party may file written objections to a magistrate judge's memorandum and recommendation within fourteen days of being served with a copy of the memorandum and recommendation. 28 U.S.C § 636(b)(1). "'Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.'" Morgan v. N.C. Dep't of Health and Human Servs., 421 F. Supp. 2d 890, 893 (W.D.N.C. 2006) (emphasis in original) (quoting Thomas v. Westinghouse Savannah River Co., 21 F. Supp. 2d 551, 560 (D.S.C. 1997)); see also Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987) ("[P]arties filing objections must specifically identify those findings objected to.") (quotation omitted). "Frivolous,

3

conclusive or general objections need not be considered by the district court." Battle, 834 F.2d at 421 (quotation omitted). "A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge." Aldrich v. Bock, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004).

Thus, "[a]n 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." Id.; see also Jones v. Hamidullah, No. 2:05-2736-PMD-RSC, 2005 WL 3298966 at *3 (D.S.C. Dec. 5, 2005) (noting a petitioner's objections to a magistrate judge's report "on the whole are without merit in that they merely rehash [the] general arguments and do not direct the court's attention to any specific portion of the [report]"). General or conclusory objections result not only in the loss of *de novo* review by the district court but also in waiver of appellate review. Tyler v. Beinor, 81 F. App'x 445, 446 (4th Cir. 2003) (per curiam); United States v. Woods, 64 F. App'x 398, 399 (4th Cir. 2003) (per curiam). If proper objections are made, a district court will review the objections under a *de novo* standard. 28 U.S.C. § 636(b)(1). Absent a specific, proper, and timely filed objection, the Court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

### III. DISCUSSION

Defendant makes clear two "disagreements" with the Magistrate Judge's determination that the officers' conduct at the Morningstar Storage facility was not violative of the Fourth Amendment. First, Defendant "disagrees . . . that 'there was no misrepresentation about possession

4

of a warrant by law enforcement when they interacted with Ms. Lourmais.'" (Doc. No. 175, p. 5). Second, Defendant "disagrees that . . . 'Detective Bridges' testimony, at least in this case, is more reliable' than Ms. Lourmais [sic]." Id. at p. 6. Taking Defendant's arguments in whole, his key contention revolves around whether Ms. Lourmais' consent to search the common areas of the Morningstar Storage facility was given voluntarily. Id. at p. 4. Accordingly, this Court will conduct a *de novo* review of the voluntariness of Ms. Lourmais' consent to search the common areas of the storage facility, followed by a review of the remainder of the M&R for clear error.

**A.      Defendant's Objection to Whether Ms. Lourmais' Consent was Voluntary**

As a threshold consideration, there were two Fourth Amendment searches conducted by law enforcement on May 14, 2019, at the Morningstar Storage facility: (1) the warrantless search of the common areas pursuant to Ms. Lourmais' consent, and (2) the search of unit #2404 pursuant to a search warrant sworn out at 7:13 pm and executed "around 7:30 pm." (Doc. No. 174, pp. 4-6). The Supreme Court of the United States has historically held that warrantless searches are "*per se* unreasonable under the Fourth Amendment," but may overcome the presumption of invalidity in certain "established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). One such recognized exception is through the consent of the suspect or a third party "who possesses common authority over the premises." Illinois v. Rodriguez, 497 U.S. 177, 179 (1990). Accordingly, governmental actors may conduct a search or seizure if: (1) the consenting party has actual or apparent authority to consent, and (2) the consent was freely and voluntarily given. Schneckloth v. Bustamonte, 412 U.S. 218, 221 (1973); Rodriguez, 497 U.S. at 187; Georgia v. Randolph, 547 U.S. 103, 122 (2006). Since Defendant does not contest that, on May 14, 2019, "the property manager of that Morningstar Storage facility, Ms. Lourmais[,] ha[d] the authority to

5

consent to a search or inspection of the 'common area' of the facility," (Doc. No. 159, p. 4), the scope of this *de novo* review will be limited to the voluntariness of her consent.

Consent will be voluntary if it is "the product of an essentially free and unconstrained choice by its maker." Schneckloth, 412 U.S. at 225. Consent will not be voluntary if Ms. Lourmais' "will was overborne in such a way as to render [her consent] the product of coercion." Arizona v. Fulminante, 499 U.S. 279, 288 (1991). Where there is coercion, there cannot be consent. Bumper v. North Carolina, 391 U.S. 543 (1968) (holding the search of a residence where the officer falsely announced he had a search warrant negated the voluntariness of consent). The Fourth Circuit has explained:

> In determining whether consent to search was freely and voluntarily given, the totality of the circumstances surrounding the consent must be examined. . . . In viewing the totality of the circumstances, it is appropriate to consider the characteristics of the [individual] (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter). Whether the [individual] knew that he possessed a right to refuse consent also is relevant in determining the voluntariness of consent, although the Government need not demonstrate that the [individual] knew of his right to refuse consent to prove that the consent was voluntary.

United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996) (internal case citations omitted). The Government bears the burden of proving consent was freely and voluntarily given. Schneckloth, 412 U.S. at 222; Bumper, 391 U.S. at 548.

During the suppression hearing on February 17, 2022, the Government presented one witness, Detective Bridges, and the defense presented one witness, Ms. Lourmais, each of whom underwent cross-examination. (Doc. No. 174, p. 3). The Magistrate Judge concluded that there was "no misrepresentation about possession of a warrant by law enforcement when they interacted

6

with Ms. Lourmais," and that "her consent permitting officers to surveil the storage facility by way of a drug-sniffing dog was perfectly voluntary." Id. at p. 14. In arriving at this conclusion, the Magistrate Judge noted Detective Bridges testified that, from his observations at the scene of Morningstar, all "interaction with Ms. Lourmais was cordial," and she "willingly provided consent to the officers' search of the common areas of the facility." Id. at pp. 5-6. Not only did she consent to a search of the common areas, she "also voluntarily provided video surveillance for the unit, the rental agreement, and other unit-related documents." Id. at p. 6. Lastly, while not referenced during witness testimony, Defendant's Motion and Objection indicate that Ms. Lourmais even lent officers a ladder which allowed them a vantage point to view the contents of unit #2404 through the chicken wire that covered the top of the unit, which included a black duffel bag in plain view. Id. at pp. 5-6; Doc. Nos. 159, 175.

As for Ms. Lourmais' testimony, it is clear from the record that she struggled to recall the specific, legally relevant details of the day in question, especially given that nearly three years had passed between May 14, 2019, and the date of the suppression hearing. (Doc. No. 174, p. 7). While at times Ms. Lourmais testified on direct examination that "she saw a copy of a search warrant prior to leading law enforcement . . . into the secure area of the facility where the units were located," she stated on cross-examination that her "memory of the events of the day was 'vague' – particularly because she did not keep a written record of the day's events." Id. at p. 8. She later confirmed that she did see a search warrant at some point on May 14, 2019. Id. Taking this testimony in conjunction with Detective Bridges' testimony that law enforcement used her computer to print the warrants out at the scene, the Magistrate Judge properly determined "Ms. Lourmais *did* see a warrant as she testified . . . [but] she almost certainly just saw it later in the

sequence of the day's events than she testified, once the warrant was sworn out later that evening." Id. at p. 15.

In essence, Defendant objects to the Magistrate Judge's credibility determination. Specifically, Defendant argues the Magistrate Judge erred in finding Detective Bridges' testimony that "none of the officers ever represented to Ms. Lourmais or in any way falsely mentioned that they possessed a warrant" was credible. To support his argument, however, Defendant merely cherry-picks portions of Ms. Lourmais' testimony that he believes suits his theory of events. Id. at p. 5. Defendant's conclusory assertion that he "disagrees" with the Magistrate Judge's determinations falls flat, especially given the lack of legal authority cited in support of his position. Defendant argues that other officers at the scene did not testify in the suppression hearing, thereby implying the possibility that other government actors could have coerced Ms. Lourmais into providing involuntary consent. (Doc. No. 175, p. 5). This argument, however, is unsupported by the record. In fact, not only did Detective Bridges testify to the contrary, but Defendant's own witness never produced evidence implying any such coercion existed. Instead, Defendant places the burden on the Government not to prove by a preponderance of evidence that the consent was voluntarily obtained, but rather to prove a negative – that no officer ever misrepresented to Ms. Lourmais that they possessed a warrant upon initial arrival. This notion, at its most basic form, simply mischaracterizes the burden of proof on the Government.

Further, to the extent Defendant asserts "what is clear is that [Ms. Lourmais] testified and specifically stated that her company required a search warrant before she could consent to the search," (Doc. No. 175, p. 5), this contention is erroneous and an incomplete reading of the record. Ms. Lourmais testified that "if law enforcement wanted to search a specific storage *unit*, the

8

company would require a warrant before authorizing the search." (Doc. No. 174, p. 9). A warrantless search of the storage *unit* implicates a different level of scrutiny under the Fourth Amendment than the warrantless search of the *common areas*. Rakas v. Illinois, 439 U.S. 128, 143 (1978). This misleading characterization of the record attempts to extend Defendant's argument out of whole cloth, which this Court will not entertain. See Battle, 834 F.2d at 421 ("Frivolous . . . objections need not be considered by the district court.").

Lastly, as set forth above, Defendant disagrees with the Magistrate Judge's determination regarding the credibility of Detective Bridges' testimony. (Doc. No. 175, p. 6). In addressing these objections, the Court notes that a reviewing court must take a more deferential stance regarding the credibility of witnesses where the Magistrate Judge sits as a trier of fact. See United States v. Manbeck, 744 F.2d 360, 392 (4th Cir. 1984) (stating "[i]t is axiomatic that it is the role of the factfinder, not the appellate court, to resolve conflicts in testimony, weigh the evidence, and judge the credibility of witnesses."); see also United States v. Brooks, No. 1:05CR248-1, [2006 BL 36801], 2006 U.S. Dist. LEXIS 25626, at *3-4, 2006 WL 695079, at *1–2 (W.D.N.C. March 15, 2006); McNairn v. Sullivan, 929 F.2d 974, 977 n. 3 (4th Cir. 1991); United States v. Stoots, No. 97-4038, [129 F.3D 1261], 1997 U.S. App. LEXIS 32787, at *2, 1997 WL 724503, at *1 (4th Cir. Nov. 20, 1997) (unpublished table decision). In support of his objection, Defendant merely asserts Detective Bridges "testified about some alleged facts from May 14, 2019 that were not documented," suggesting the investigator's recollection of the timeline of events was compromised. (Doc. No. 175, p. 6).

The Court is not persuaded by Defendant's conclusory assertion regarding Detective Bridges' credibility. Detective Bridges, a Drug Enforcement Administration ("DEA") task force

officer employed with the Gastonia Police Department, has upwards of twenty-years of experience in the field of law enforcement. (Doc. No. 174, p. 4). He testified that his primary role in the department is working drug trafficking investigations, which included the current investigation into Defendant. Id. The specificity of Detective Bridges' recitation of events leading to the search of Morningstar Storage unit #2404 indicates he was well-prepared, organized, and accounted for the timeline of the investigation in a professional, proficient manner. Accordingly, the Court agrees with the Magistrate Judge's credibility determination.[3]

Having addressed all of Defendant's points of disagreement, and after a careful review of the record in this case, the Court finds that Ms. Lourmais' consent to search the *common area* of Morningstar Storage was voluntary. This Court takes seriously the contention that law enforcement would willfully misrepresent to an impartial witness that they possessed a search warrant, especially in light of the Supreme Court precedent explicitly denouncing this tactic of obtaining consent to search. See Bumper, 391 U.S. at 550. In Bumper, the Supreme Court explained:

> A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid. The result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant, or fails to show that there was, in fact, any warrant at all. When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent.

---

[3] To the extent Defendant implies Detective Bridges could not testify from memory because of the length of time between May 14, 2019, and the date of his testimony, the Court disagrees. Moreover, the Court notes Defendant's witness, Ms. Lourmais, openly testified she "does not recall with precision the details of the day," and "did not keep a written record of the day's events." (Doc. No. 174, pp. 7-8). Accordingly, Defendant's attempt to persuade the Court to cherry-pick certain evidence instead of evaluating the totality of the evidence presented fails.

Id. at 549-50. This basic principle of law has been a touchstone of American search and seizure jurisprudence for over a half-century. Defendant's objection alleging officers at the scene flouted this fundamental standard, however, is unpersuasive, unsupported, and overruled.

In determining whether Ms. Lourmais' consent to search the common areas of the Morningstar Storage facility was freely and voluntarily given, the Court finds, based on the totality of the circumstances, that it was. Schneckloth, 412 U.S. at 227; see also Lattimore, 87 F.3d at 650 (providing the Court with factors to weigh when conducting a *de novo* review of the totality of the circumstances). Evidence presented at the suppression hearing revealed that there was a total of only two law enforcement officers at Morningstar during the time Ms. Lourmais provided consent to search. (Doc. No. 174, p. 5). Detective Bridges' testimony revealed that, from what was relayed to him, the conversations with Ms. Lourmais were "cordial," and Ms. Lourmais, in testifying for the defense, even confirmed that the "officers were very pleasant," and in no way "threatened her or her employment." Id. at pp. 5, 8-9.

The record further indicates that the traffic stop of Defendant's vehicle occurred around 3:20 pm. Id. at p. 4. At the conclusion of the stop, which included the seizure of multiple drugs, two firearms, and a storage unit key, two officers went to Morningstar to continue the investigation and speak with Ms. Lourmais. Id. at p. 5. Detective Bridges testified that "Officer Newman then arrived at the Morningstar facility with his drug-sniffing dog – at some time around 5:25 pm." Id. at p. 6. Therefore, it is fair to surmise that any interaction between the two law enforcement officers and Ms. Lourmais occurred within a very short timeframe – likely less than an hour.

Lastly, the record reveals that Ms. Lourmais knew she had the right to refuse consent during the interaction, evidenced by her statement that "if law enforcement wanted to search a specific

11

Case 3:19-cr-00211-GCM-DCK   Document 179   Filed 04/21/22   Page 11 of 13

storage *unit*, the company would require a warrant before authorizing the search." Id. at p. 9. While the Government need not prove Ms. Lourmais knew of her right to refuse consent to search to the *common areas* of the facility, the fact that she understood the company would not consent to a search of anyone's specific *unit* provides support that her consent was voluntary. See Lattimore, 87 F.3d at 650.

Therefore, this Court concludes that Ms. Lourmais' consent to search the *common areas* of Morningstar Storage was voluntary, and not the product of duress or coercion, whether express or implied, based on the totality of the circumstances in this case. Schneckloth, 412 U.S. at 227; see also Lattimore, 87 F.3d at 650. As such, the Court overrules Defendant's objection regarding the voluntariness of Ms. Lourmais' consent following *de novo* review.

**B.     Clear Error Review of Defendant's Capacity to Challenge the Searches Under the Fourth Amendment**

As previously noted, the only specific objection raised in Defendant's Objection to the Magistrate Judge's M&R concerns the voluntariness of Ms. Lourmais' consent to search the common area of the Morningstar Storage facility. (Doc. No. 175, p. 5). The Magistrate Judge's remaining conclusions, therefore, are reviewed for clear error. In the absence of a specific, proper, and timely filed objection, the Court need not give any explanation for adopting the M&R. Diamond, 416 F.3d at 315; Camby, 718 F.2d at 200. Having carefully reviewed the M&R, the Court finds no clear error as to the Magistrate Judge's conclusions regarding Defendant's capacity to challenge the searches of the Morningstar common areas and storage unit #2404.[4]

---

[4] Notwithstanding the foregoing, the Court notes its reluctance in finding Defendant had standing to challenge the search of *unit* #2404. Defendant, while not even a named lessee of unit #2404, is merely a guest at the facility, whose presence alone on the premises is insufficient to confer a legitimate expectation of privacy. Rakas, 439 U.S. at 142; see also Minnesota v. Carter, 525 U.S. 83, 91 (1998) ("We would not wish to be understood as saying that legitimate presence on the premises is irrelevant to one's expectation of privacy, but it cannot be deemed controlling."). Further,

## IV. CONCLUSION

For the foregoing reasons, the Magistrate Judge's M&R, (Doc. No. 174), is AFFIRMED and ADOPTED, Defendant's Objection to the M&R, (Doc. No. 175), is OVERRULED, and Defendant's Motion to Suppress, (Doc. No. 159), is DENIED.

IT IS SO ORDERED.

Signed: April 20, 2022

_____
Frank D. Whitney
United States District Judge

---

the Supreme Court has held that the mere fact that a defendant claims ownership of items within a container owned by someone else does not entitle the defendant to challenge the legality of the search. See Rawlings v. Kentucky, 448 U.S. 98, 105 (1980). This is not to say Defendant lacks a possessory interest in the *items* located within unit #2404; rather, this Court is hesitant to conclude Defendant has a possessory interest in the commercial container used to store said items. As such, the jury may properly weigh the evidence presented during trial that both Defendant and his co-conspirator constructively possessed the contraband in unit #2404.